IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

QUINTON ADAMS,                           :
                                         :
            Petitioner,                  :
                                         :
                                         :
   VS.                                   :       1 : 12-CV-160 (WLS)
                                         :
Warden DAVID FRAZIER,                    :
                                         :
                                         :
            Respondent.                  :

### RECOMMENDATION

The Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his Grady County convictions for malice murder, aggravated assault, and possession of a firearm during commission of a crime. (Doc. 1). Petitioner was indicted by a Grady County grand jury and was convicted on all charges following a jury trial in June 2001. Petitioner was sentenced to life for malice murder, twenty years concurrent for aggravated assault, and five years for the firearm possession to run consecutively to the life sentence. Petitioner's convictions and sentences were affirmed on direct appeal. *Adams v. State*, 283 Ga. 298, 658 S.E.2d 627 (2008).

Petitioner filed a state habeas corpus petition in Charlton County in May 2009, which was transferred to the Superior Court of Washington County. (Docs. 7-2, 7-3). Following an evidentiary hearing, the state habeas court denied relief in December 2011. (Doc. 7-6). The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on October 15, 2012. (Doc. 7-7). Petitioner filed this federal Petition on October 23, 2012. (Doc. 1).

## Factual Background

This Court is "bound under 28 U.S.C. § 2254[(e)] to afford factual findings of state [appellate] courts a presumption of correctness." *Towne v. Dugger*, 899 F.2d 1104, 1106 (11th Cir. 1990); *Paxton v. Jarvis*, 735 F.2d 1306, 1308 (11th Cir. 1984). The habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") thus retains the statutory presumption of correctness that is to be afforded state courts' factual findings. *Id.* Inasmuch as no dispute has been raised herein regarding the findings of fact issued by the Supreme Court of Georgia, said findings are hereby adopted as follows:

> The evidence showed that, two days before [Keith] Williams was killed, Adams, his brother Christopher Adams ("Christopher Adams"), and Danny Barker had an altercation with a group of men including Williams. During this fight, Adams was hit in the head with a bottle and believed that Williams hit him. Adams told Williams that he would pay for what he had done. Two nights later, Williams attended a birthday party; as he and Norwood left the party, they were accosted by a group of three men. Williams and Norwood ran and the men began shooting. Williams was fatally wounded, and Norwood escaped. Norwood identified Adams, Barker and Christopher Adams as running from the scene of the shooting, and other witnesses saw Adams and the other two men fleeing the scene of the shooting.

*Adams*, 658 S.E.2d at 629.

## Standard of Review

Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this

portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, the Court held that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 407).

Accordingly, the Petitioner must first establish that the state habeas court's adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, as this is a post-Anti-Terrorism and Effective Death Penalty Act ("AEDPA") case, the Petitioner herein may obtain federal habeas

3

relief *only* if the challenged state court decision was either contrary to or an unreasonable application of Federal law as determined by the Supreme Court, or if the state court issued an unreasonable determination of the facts. *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3, 7 (2002); 28 U.S.C. ▪ 2254(d).

*Ineffective assistance of counsel at trial*

In Ground 1 of the Petition, the Petitioner alleges that his trial counsel was ineffective in failing to strike jurors for cause as one juror knew the victim's family, failing to impeach witnesses with prior convictions, and failing to object to allegedly improper closing arguments by the prosecutor. Petitioner raised these claims on appeal, and they were ruled upon by the Georgia Supreme Court.

In order to establish that his counsel's representation was constitutionally defective, the Petitioner must show (1) that his counsel's representation was deficient, and (2) that the petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985). The Petitioner "must overcome the presumption, that, under the circumstances, the challenged action 'might be considered sound [] strategy'". *Strickland*, 466 U.S. at 688 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Our role in collaterally reviewing state judicial proceedings is not to point out counsel's errors, but only to determine whether counsel's performance in a given proceeding was so beneath prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989).

The *Strickland* court stated that "[a] court need not determine whether counsel's

4

performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. The Court's determination of prejudice to the Petitioner must consider the totality of the evidence before the jury and ask if "the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696.

The state court found that:

> Adams does not show that had a motion to strike been made, it would have been granted; whether to strike a prospective juror for cause is in the trial court's discretion. Adams asserts that the trial court's willingness to strike prospective juror Gordon for cause . . . shows that a motion would have been successful. However, the jurors' situations were not identical; while each revealed a relationship with certain of the parties interested in the outcome of the case so as to warrant further investigation, their responses to follow-up questions were different in an important aspect. When first asked if he could put aside his feelings of friendship and decide the case upon the proper basis, Gordon said he would have trouble doing so; when Smiley was first asked a similar question, she responded that she could properly render a verdict. Although Gordon later said that he could properly act as a juror, the fact remains that his responses on the subject presented a conflict for the trial court's resolution that Smiley's responses did not. Thus, it cannot be concluded that the trial court's ruling as to prospective juror Gordon would "control" a ruling as to prospective juror Smiley. Further, Smiley's responses did not indicate that she had formed "an opinion of [Adams's] guilt or innocence . . . so fixed and definite that [she would] be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Accordingly, Adams fails to show that a motion to strike prospective juror Smiley for cause would have produced a different result in his trial.
>
> . . .
>
> [Adams also] contends that trial counsel was deficient in failing to

5

> attempt to impeach those witnesses with that evidence [that four witnesses had been convicted of crimes]. Counsel testified that he did not remember being aware that the witnesses had such convictions, that the failure to attempt to impeach them with such convictions was not a decision of strategy, and that "perhaps" it should have been done. However, at the time of Adams's trial, the introduction of certified copies of the witnesses' impeaching convictions would have resulted in defense counsel losing the right to make the final closing argument, and it was a reasonable defense strategy to avoid introducing evidence to preserve that right. And not only did Adams's counsel do so, but counsel for the two co-defendants both waived the right to open closing argument and made only concluding argument.
>
> Further, examination of the trial transcript supports the conclusion that Adams's counsel wished to retain that right [when counsel assured the court he was refraining from introducing evidence or testimony] . . . And, at the hearing on amended motion for new trial, Adams testified that trial counsel had told him if he did not present evidence at trial, "we will be able to get last argument." Accordingly, there was evidence supporting the trial court's implicit finding that counsel was, in fact, pursuing a reasonable strategy . . .
>
> [In regard to Adams's assertion that the prosecutor improperly vouched for the veracity of a witness in closing arguments, and that his counsel failed to object to these comments,] [t]he prosecutor's comments with which appellant takes issue are permissible since they are the conclusion the prosecutor wished the jury to draw from the evidence, and not a statement of the prosecutor's personal belief as to the veracity of a witness. Accordingly, counsel's failure to object to these comments during argument was not deficient performance.

*Adams*, 658 S.E 2d at 630-32 (internal citations omitted).

It does not appear, nor has Petitioner shown, that the state court's decision in this matter was contrary to or an unreasonable application of federal law. The court cited to and relied on the principles governing ineffectiveness set forth in *Strickland v. Washington*, the clearly established law in this area, and determined that Petitioner's counsel provided the Petitioner with

effective representation.  Relying on the principles of *Strickland* and its incorporation into Georgia law, the court found that counsel was not deficient and did not prejudice Petitioner.  The facts as found by the state court evidence counsel's effective representation.  The state court's decision is not contrary to or an unreasonable application of clearly established federal law, nor is it unreasonable under the facts of this case.  Therefore, Petitioner's contentions that counsel was ineffective in that he failed to strike jurors for cause, failed to impeach witnesses with prior convictions, and failed to object to allegedly improper closing arguments by the prosecutor will not support the granting of habeas relief herein.

*Ineffective assistance of counsel on appeal*

In Ground Two of the Petition, the Petitioner asserts that his appellate counsel was ineffective in failing to raise on appeal an alleged error in the trial court's instructions to the jury. A criminal defendant has a right to counsel on appeal, "limited to the first appeal as of right". *Evitts v. Lucy*, 469 U.S. 387, 394 (1985).  However, this right does not encompass a right to compel said counsel to pursue every claim deemed meritorious by the defendant.  The Supreme Court has expressly held that "[n]either *Anders* nor any other decision of this Court suggests, [however], that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Id.*

The state habeas court considered this issue and found that:

7

> Petitioner argues he received ineffective assistance of appellate counsel because counsel failed to raise on appeal the impropriety of the court's charge to the jury . . . Petitioner's trial counsel requested, and the trial court gave, [an instruction authorizing jurors to consider the witness's certainty in his identification as a factor in determining the reliability of that identification]. At the charge conference, the trial judge indicated what charges he intended to give and then asked all counsel if there were any other charges they felt should be given. All counsel responded "[n]o, sir."
>
> Where a charge is given at the defendant's request, the defendant is then precluded from challenging that charge as error. Petitioner argues he is not so precluded because he effectively withdrew his request to charge by responding "[n]o, sir" to the trial judge's question "[a]nything else that you can think I should charge?" However, . . . [n]o such intent [to withdraw the request] was expressed by Petitioner's counsel, who was presumably relying upon his previously submitted request . . .
>
> . . . Trial counsel requested the charge and never effectively withdrew the request. Petitioner, therefore, cannot complain that the charge was given.

Doc. 7-6, pp. 2-3 (internal citations omitted).

The state habeas court concluded, therefore, that the Petitioner had failed to show a reasonable probability that the result would have been different had appellate counsel raised the issue on appeal.

It does not appear, nor has Petitioner shown, that the state habeas court's decision in this matter was contrary to or an unreasonable application of federal law. The court cited to and relied on the principles governing ineffectiveness set forth in *Strickland v. Washington*, the clearly established law in this area, and determined that Petitioner's appellate counsel provided the Petitioner with effective representation. Relying on the principles of *Strickland* and its incorporation into Georgia law, the court found that appellate counsel was not deficient and did

not prejudice Petitioner. The facts as found by the state habeas court evidence appellate counsel's effective representation. The state habeas court's decision is not contrary to or an unreasonable application of clearly established federal law, nor is it unreasonable under the facts of this case. Therefore, Petitioner's contentions that appellate counsel was ineffective in that he failed to raise on appeal the issue regarding jury charges will not support the granting of habeas relief herein.

*Conclusion*

Inasmuch as none of the grounds raised by the Petitioner will support the granting of federal habeas relief, **IT IS RECOMMENDED** that this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 16th day of May, 2013.

s/ ***THOMAS Q. LANGSTAFF***

UNITED STATES MAGISTRATE JUDGE